UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOSEPH A. ESPARZA,

    Plaintiff,

v.                                                               Case No. 1:18-cv-02915-WCG-MPB

JENNIFER SMITH, et al.,

    Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS'
## MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Joseph A. Esparza, who is currently representing himself, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Lisa Blount, Mark Cabrera, and Jennifer Smith violated his constitutional rights while he was incarcerated within the New Castle Correctional Facility. In particular, Esparza claims that Blount and Cabrera were deliberately indifferent to his medical needs following an alleged slip and fall and that Smith failed to investigate his grievances regarding his health care complaints. Presently before the court are Defendants' motions for summary judgment. Esparza has not responded to the motions for summary judgment, and the time to do so has passed. For the following reasons, the motions for summary judgment will be granted and the case will be dismissed.

**BACKGROUND**

Because Esparza did not respond to the motions for summary judgment, Defendants' proposed findings of fact are deemed admitted for the purposes of summary judgment. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated

by the local rules results in an admission."). At all times relevant to this matter, Esparza was incarcerated at the New Castle Correctional Facility. Nurse Lisa Blount is a registered nurse who has worked, and continues to work, at the New Castle Correctional Facility and Dr. Mark Cabrera was employed as a physician at the New Castle Correctional Facility.

On July 28, 2018, at approximately 10:40 a.m., Esparza slipped on some water and fell down a portion of steps in his cell block. Custody officers escorted Esparza to the medical unit, where Nurse Blount assessed Esparza for his complaints of pain at approximately 11:22 a.m. Nurse Blount took Esparza's vitals, which were within the normal limits, and noted Esparza had no apparent injuries. She noted Esparza was alert and oriented, had clear speech, and had a normal gait. Nurse Blount conducted an ocular assessment, called the Pupils Equal and Reactive to Light assessment (PERLA), that returned normal results. After noting that Esparza was able to complete his activities of daily living, Nurse Blount provided Esparza with Acetaminophen to address his complaints of musculoskeletal pain. Nurse Blount checked Esparza's vitals again at 11:37 a.m. and noted that they were within normal limits. Nurse Blount provided Esparza with a one-day lay-in so that he could recover from his musculoskeletal pain and instructed Esparza to return to the medical department if his symptoms persisted or worsened. On July 30, 2018, Esparza complained to custody staff of worsening pain. Nurse Ward examined Esparza, provided him with another one-day lay-in pass, and scheduled him to see the provider the following day.

Dr. Cabrera first treated Esparza on July 31, 2018, for his complaints of pain. During this visit, Dr. Cabrera assessed Esparza's vitals and noted they were normal. Esparza reported that he used heat and ice and had taken 200mg of Ibuprofen for his pain. Dr. Cabrera also assessed Esparza for a head injury and concluded Esparza had neither a concussion nor a fracture. He monitored

Esparza's eyes using an extraocular muscle movement (EOM) assessment. Dr. Cabrera noted that Esparza had difficulty moving his eyes during the assessment but Esparza had no difficulty moving his eyes when the EOM test was not administered. Dr. Cabrera did not observe bruises or ecchymoses in or around Esparza's eyes and noted Esparza displayed appropriate affect and ambulated well. Dr. Cabrera also examined Esparza's healed scar along his midline. Even though Esparza complained of tenderness, Dr. Cabrera did not detect any masses or organomegaly during the examination. Dr. Cabrera ordered Esparza to remain on bed rest and provided an order for Meloxicam to address Esparza's pain complaints.

Esparza followed up with Dr. Cabrera on August 8, 2018 regarding his complaints of musculoskeletal pain and side effects from the Meloxicam. Dr. Cabrera discontinued the Meloxicam order and issued prescription orders for Naproxen and Acetaminophen. Dr. Cabrera also assessed Esparza for injuries and noted Esparza had a light bruise on his left hand and a light bruise on his left knee. Upon examination, Dr. Cabrera concluded Esparza did not exhibit signs of neurological dysfunction. Dr. Cabrera ordered a one-week lay-in for Esparza.

Esparza presented to an appointment with Dr. Cabrera for his musculoskeletal pain on August 20, 2018. During this visit, Esparza complained of side effects of Naproxen. Dr. Cabrera issued an order for Acetaminophen, which was valid from August 20, 2018 to February 19, 2019. Upon examination, Dr. Cabrera noted Esparza ambulated well but displayed some difficulty getting onto the examination table. Dr. Cabrera conducted a neurological assessment and observed that Esparza was able to maintain his balance when asked to close his eyes, despite Esparza's complaints of dizziness.

Jennifer Smith is the Grievance Specialist at New Castle Correctional Facility. She is responsible for logging offender grievances and responses into the grievance computer system and is the custodian of the Facility's grievance records. The Indiana Department of Corrections (IDOC) has developed Policy and Procedure 00-02-301, Offender Grievance Procedure, which permits offenders committed to the IDOC to resolve concerns and complaints relating to their conditions of confinement. The policy describes the process of logging, investigating, and resolving an inmate's grievance. Once a grievance is investigated and a response is issued, the inmate may appeal the decision, in which case the grievance is forwarded to the Department Offender Grievance Manager for response.

Smith located five grievances filed by Esparza related to his medical care. Smith logged, investigated, and provided a Level 1 response to each grievance. Smith is not medically trained and does not have any knowledge about the medical conditions of those offenders of the IDOC incarcarated in the Facility or what treatment or care is reasonable. As part of her investigation of each grievance, Smith submitted the matter and investigatory questions to the Health Services Administrator or a medical professional at the Facility. Once Smith received a response from the Health Service Administrator or a health care professional, Smith summarized the response for Esparza. Esparza only appealed three of the five grievances.

With respect to the grievances related to Esparza's fall, Smith addressed Esparza's grievance concerning a fall occurring on July 28, 2018, noting that "Ms. Scott, MBA, CCHP – Associate Director of Administrative Services Wexford Health states that you were seen by the medical provider on 7/31, 8/8, and 8/20 for complaints of pain from a fall reportedly occurring on 7/28/18. You were evaluated for dizziness and pain with no clinical indication for x-rays. You were

prescribed medication for pain, being advised narcotic medication was not warranted at the time. Outside specialist was also not warranted by the medical provider based on evaluation." Dkt. No. 28 at 4 (quoting Ex. H at 4). Esparza did not appeal this decision.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "Material" means that the factual dispute must be outcome-determinative under the law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the nonmoving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

**ANALYSIS**

**A. Medical Defendants' Motion for Summary Judgment**

Esparza asserts that the medical defendants were deliberately indifferent to his medical needs. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's deliberate indifference to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. To prove a claim of deliberate indifference, the plaintiff must "establish that he suffered from 'an objectively serious medical condition' and that the 'defendant was deliberately indifferent to that condition.'" *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)).

The medical defendants assert that Esparza has not demonstrated that their actions satisfied the subjective component of the Eighth Amendment deliberate indifference standard. Even if the court assumes Esparza had a serious medical condition, Esparza must demonstrate that the medical defendants were deliberately indifferent to that condition. Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendants knew of, yet disregarded, an excessive risk to Esparza's health or safety. *Farmer*, 511 U.S. at 835, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when

he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted). In this case, Esparza claims Nurse Blount and Dr. Cabrera were deliberately indifferent in their treatment of the injuries he sustained after falling down a few stairs.

In this case, the medical defendants were not deliberately indifferent to Esparza's medical needs. The record shows that, after Esparza fell down the steps on July 28, 2018, he was escorted to the medical department where he was assessed by Nurse Blount. Nurse Blount assessed Esparza for bodily and neurological injury, did not observe any injuries on examination, took his vitals, and conducted an ocular assessment. She provided a pain reliever and one-day lay-in to address Plaintiff's complaints of musculoskeletal pain and instructed Esparza to return to the medical department if his symptoms persisted or worsened. When Esparza complained of worsening symptoms on July 30, 2018, he was scheduled to be seen by Dr. Cabrera on July 31, 2018.

Dr. Cabrera saw Esparza on July 31, 2018, August 8, 2018, and August 20, 2018, regarding the slip and fall incident. At the July 31, 2018 appointment, Esparza complained of severe pain in his head, neck, left shoulder, abdomen, back, hips, and knees. Upon examination, Dr. Cabrera noted that Esparza's vitals were normal, that Esparza passed all testing, and that Esparza showed no signs of skull fracture or concussion. Dr. Cabrera ordered bed rest and prescribed Meloxicam. At the August 8, 2018 appointment, Dr. Cabrera observed the presence of two light bruises on Esparza's left hand and left knee and assessed Esparza for bodily injury and neurological defect. Dr. Cabrera concluded Esparza did not display any alarming indications. Esparza complained of Meloxicam side effects, and Dr. Cabrera discontinued the order for Meloxicam and ordered Naproxen and Acetaminophen. Dr. Cabrera also provided Esparza with a one-week lay-in so that he could rest

7

and recover. At the August 20, 2018 examination, Esparza complained of dizziness, left shoulder pain, facial pain, and side effects from taking Naproxen. Dr. Cabrera examined Esparza and ordered Acetaminophen to address Esparza's complaints of pain. In short, Dr. Cabrera addressed Esparza's complaints by conducting three separate physical assessments, ordering Esparza to remain on bed rest to facilitate recovery, prescribing a variety of pain medications, and changing Esparza's prescribed course of treatment after Esparza indicated he was not tolerating Meloxicam and Naproxen.

In light of this evidence, Esparza has failed to establish that the medical defendants were deliberately indifferent to his medical needs. Nurse Blount and Dr. Cabrera provided appropriate and timely care to Esparza. Esparza has not provided evidence demonstrating that the medical defendants' treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision" on his or her medical judgment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (citation omitted). Accordingly, the medical defendants are entitled to summary judgment, and Esparza's claims against them will be dismissed.

**B. Smith's Motion for Summary Judgment**

Esparza asserts Smith was deliberately indifferent because she failed to investigate Esparza's grievances regarding his health care complaints. "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015); *see also Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications

8

can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."). In this case, there is no dispute that Smith properly investigated Esparza's grievances. After Smith received a grievance, she investigated the grievance by requesting additional information from the medical department. Once she received a response from the Health Service Administrator, she provided that information to Esparza in her response. As a non-medical professional, Smith did not err in relying on the medical information she received from the Health Service Administrator or other health professional. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Based on this record, Esparza has failed to establish that Smith failed to investigate his grievances. This claim will therefore be dismissed.

## CONCLUSION

For these reasons, Blount and Cabrera's motion for summary judgment (Dkt. No. 23) and Smith's motion for summary judgment (Dkt. No. 27) are **GRANTED**, and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   4th   day of November, 2019.

                                        s/ William C. Griesbach
                                        William C. Griesbach, District Judge[*]
                                        United States District Court - WIED

---

[*] Of the Eastern District of Wisconsin, sitting by designation.